2020 IL App (1st) 171830-U

No. 1-17-1830

Order filed August 31, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 18770 |
| | ) | |
| KELVIN L. PATRICK, | ) | Honorable |
| | ) | Michael B. McHale, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Griffin and Justice Walker concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The circuit court's summary dismissal of defendant's postconviction petition is affirmed where defendant's allegations of ineffective assistance of counsel are waived, lack the required evidentiary support, or without merit.

¶ 2   Defendant Kelvin L. Patrick appeals from an order of the circuit court of Cook County summarily dismissing his *pro se* postconviction petition as frivolous and patently without merit. On appeal, defendant contends that the court erred when it dismissed his petition because he presented arguable claims that his trial counsel rendered ineffective assistance when counsel failed

to file a motion to suppress defendant's statements to police obtained in violation of his *Miranda* rights, and failed to introduce available documentary evidence that he did not live at the house where police recovered a gun. Defendant also contends that his appellate counsel was ineffective for not raising these claims on direct appeal. We affirm.

¶ 3    Following a jury trial, defendant was convicted of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2010)) based on his unlawful constructive possession of an unloaded sawed-off shotgun, and was sentenced to 14 years' imprisonment. The evidence at trial showed that on October 13, 2011, police recovered the gun while executing a search warrant for defendant and a single-family home at a specific address in the 6600 block of South Seeley Avenue.

¶ 4    Defendant's first trial ended in a mistrial. Prior to the first trial, the State filed a motion *in limine* to introduce evidence of defendant's prior convictions for murder and armed robbery for impeachment purposes if he testified. See *People v. Montgomery*, 47 Ill. 2d 510 (1971). The trial court allowed the armed robbery conviction, but precluded the State from introducing the murder conviction, finding that its prejudicial impact outweighed its probative value. Defendant testified at his first trial, denying that he lived at the 6600 address and denying that he made inculpatory statements to the police. He presented two documents addressed to him at a residence in the 6500 block of South Seeley – a social security statement dated March 3, 2011, and a statement from the Department of Human Services dated June 7, 2011. The jury was unable to reach a verdict.

¶ 5    The same assistant public defender continued to represent defendant for his second trial. Prior to the second trial, counsel filed a "Motion to Quash Arrest and Suppress Evidence." In the motion, counsel alleged that on October 13, 2011, defendant was "arrested and detained" on the sidewalk outside the 6600 residence. Counsel noted that police handcuffed defendant outside and

brought him inside the residence. Counsel stated that after being detained and taken inside, defendant told police "I don't want you guys to tear up this house. Let me just tell you where the stuff is." Counsel quoted defendant as further stating to police that he got the "sawed off shotgun from old friend who has been dead for 20 years. I have it for protection on the block. I stay here with my girlfriend." Counsel argued that defendant was not engaged in illegal activity at the time of his arrest on the sidewalk, and that the police lacked probable cause to arrest him based on him being named in a search warrant. Counsel further argued that during the arrest and subsequent detention, the police were provided with a "forum for interrogation" and elicited statements and "gestural signals" from defendant. Counsel asserted that all evidence obtained from defendant had to be suppressed, including "[s]tatements, utterances, reports of gestures and responses by petitioner during the detentions following the arrest." In support of her argument, counsel quoted *People v. Hill*, 2012 IL App (1st) 102028, where this court found that trial counsel was ineffective for failing to file a motion to suppress the defendant's statements to police where the defendant was detained in one location, transported 10 blocks to the apartment that was the subject of the search warrant, and made statements after police executed the search warrant.

¶ 6      At the hearing on the motion to suppress, the trial court found that the factual circumstances in this case were distinct from those in *Hill*. Here, defendant was not relocated and he made some statements before execution of the search warrant. The court expressly stated "I don't think that it is ineffective assistance of counsel not to file this motion." The court further stated:

> "I do find that there was probable cause to detain Mr. Patrick. The police had a search
> warrant. Mr. Patrick was located essentially on the real property of the place for the search

warrant and there was a conversation. That conversation was not coercive or involuntary and, based on this conversation, continued detention was appropriate."

Accordingly, the court denied defendant's motion to quash arrest and suppress evidence. The court also reconsidered its ruling on the State's *Montgomery* motion and determined that defendant's prior convictions for both armed robbery and murder were admissible for impeachment purposes if defendant testified at his second trial.

¶ 7 At that trial, Chicago police officer Isaac Shavers testified that about 9 a.m. on October 13, 2011, he met with a team of 12 to 13 officers to plan their execution of a search warrant for the single-family residence located in the 6600 block of South Seeley. About 9:15, Shavers drove to the location, parked his vehicle two houses from the subject house, and began surveillance of the address. Shavers had a photograph of the person for whom he was searching. About 30 minutes later, a man exited the residence wearing a bathrobe and smoking a cigarette. The man walked south on Seeley, passing Shavers' vehicle and one or two more houses. The man resembled the person in the photograph. When the man turned around and began walking back towards the house, Shavers radioed his team to come to the location to detain the man. In court, Shavers identified defendant as the man in the bathrobe. As defendant got closer to the house, Shavers exited his vehicle and detained defendant by grabbing his hand and identifying himself as an officer. About five seconds later, the search execution team arrived and surrounded the house.

¶ 8 Shavers further testified that Officer Mark Jakob arrived at the scene and handcuffed defendant. As the two officers and defendant walked towards the house, there was a brief conversation between Jakob and defendant, but Shavers did not hear what was said. Other officers had entered the house and detained at least two adults and some small children in the living room.

Based on the conversation between Jakob and defendant, the two officers and defendant went to a second-floor bedroom. Therein, Shavers observed an open bowling bag sitting atop the bed. The butt of a gun was protruding from the bag. Inside the bag, Shavers found an unloaded sawed-off shotgun. The gun was not in good condition and had duct tape around the stock area. As Shavers recovered the gun, he heard defendant tell Jakob that he had the gun "for protection on the block." Inside the bedroom closet was a variety of men's clothing and shoes. Prior to going to the police station, defendant changed from his bathrobe into clothing and shoes that were in that bedroom.

¶ 9    On cross examination, Shavers testified that Jakob handcuffed defendant while he was on the sidewalk for officer safety. During a pat-down search at that time, no weapons or narcotics were found on defendant's person. After the gun was recovered, Shavers heard defendant tell Jakob that he had gotten the gun from someone. The men's clothing in the bedroom belonged to defendant.

¶ 10    On redirect examination, Shavers testified that they did not ask defendant to provide a written statement because when someone admits ownership of an item, there is no need for a written statement. Defendant told the police that the sawed-off shotgun was his, and that he had gotten it from a friend who had died about 20 years ago. Defendant also stated that he lived with his girlfriend at the 6600 address where the gun was found.

¶ 11    Officer Jakob testified that he was the affiant of the search warrant for the residence in the 6600 block of Seeley and a member of the team of 8 to 12 officers who executed the warrant. Shavers radioed the search team that a man wearing a robe had exited the residence and was walking southbound on Seeley. When Jakob arrived at the address, he observed that Shavers had detained the man. In court, Jakob identified defendant as that man. Jakob informed defendant that

the team had a search warrant for him and the residence, and gave him a copy of the warrant. As defendant approached the front door of the residence with the officers, defendant stated "all right, come on, don't tear the house up. I'll show you guys where the stuff is at. You know, this is my girlfriend and my house. Please don't tear it up." Jakob entered the house with defendant. As they stood inside the house with Shavers and Officer Del Ponte,[1] defendant pointed and stated "upstairs in a bedroom." Defendant went upstairs with the three officers, and when they reached the second floor, defendant indicated the bedroom on the left, and they all entered that room.

¶ 12    Jakob testified that Shavers said something which caused him to look on top of the bed. Jakob observed a bowling bag with the butt of a gun protruding from it. Jakob looked inside the bag and observed a sawed-off shotgun with duct tape over the top and bottom of it. Jakob asked defendant "[w]hat's the story with this?" Defendant replied "Oh, that old thing? I've had that for like 20 years." Defendant further stated "I got that from a friend of mine who died." Defendant said he needed the gun for protection because a lot of shooting occurred on that particular block.

¶ 13    In the same bedroom where the gun was found, Jakob found a State Farm automobile insurance card which indicated that the names of the insured were defendant and Cathy Morris. Jakob also found a ComEd bill addressed to Morris at the 6600 address. During his investigation, Jakob learned that Morris was defendant's girlfriend or wife, and that she lived in that house with defendant. Jakob also observed numerous items of men's clothing and shoes in the bedroom. Defendant was taken into custody. The officers asked defendant if he had any clothes to change into. Defendant replied "yeah, the clothes are in the closet." Defendant changed into a shirt, pants and shoes that he retrieved from the bedroom closet and other areas of the bedroom.

---

[1] Officer Del Ponte's first name does not appear in the record.

¶ 14    On cross-examination, Jakob acknowledged that he handcuffed defendant while they were outside on the sidewalk and walked him into the house. The two other adults inside the home were a woman who was about 50, and a man who appeared to be about 30. Shavers and Del Ponte went upstairs first and cleared the second floor for officer safety. Jakob then went upstairs with defendant in front of him in handcuffs. Jakob acknowledged that there was no address on the State Farm insurance card and that it had expired on February 15, 2011. He also acknowledged that defendant's name was not on the ComEd bill. Jakob documented defendant's statements in his police report, but did not have defendant provide a written or videotaped statement.

¶ 15    On redirect examination, Jakob testified that the shotgun was not processed for fingerprints or DNA because there was no doubt as to the ownership of the gun when defendant told them that he was the owner.

¶ 16    Chicago police officer Donald Story testified that he was on the team that executed the search warrant. Following the search, defendant was transported to the police station. Story identified defendant in court. At the station, Story interviewed defendant to obtain general information for the police report. Defendant told Story that he resided at the address in the 6600 block of South Seeley, which was the same address where the search warrant was executed.

¶ 17    The State presented a stipulation that defendant had been previously convicted of two qualifying felony offenses.

¶ 18    Defendant testified that on October 13, 2011, he was living in a house in the 6500 block of South Seeley with his mother-in-law. He had been living at that address for seven months to a year because he was separated from his wife, Morris. Defendant and Morris had two children together

who were 12 and 8 years old. Morris also had two older sons – Shaquille who was 19, and Kendrick who was 30. Morris lived at the address in the 6600 block of Seeley with all of her children.

¶ 19    About 5:30 a.m. on October 13, Morris called defendant and asked him to come to her house to watch their children because she had to go to work. Defendant left the 6500 address about 5:45 a.m. and went to Morris' house at the 6600 address. He was wearing black jeans, a white hooded sweatshirt, and white gym shoes. There were six children in the living room of Morris' house – defendant's two children and Kendrick's children. Kendrick arrived home sometime after 7 a.m. Defendant talked with Kendrick for a while and left the 6600 address about 8 a.m. He was still wearing his jeans, sweatshirt and gym shoes. Defendant began walking down the street to a gas station to buy cigarettes. He heard a racing vehicle engine, turned around, and observed a brown vehicle approaching him. The vehicle stopped and two police officers jumped out. The officers said "hey, come here" and grabbed defendant. One officer handcuffed defendant and the other returned to the vehicle. The officer who handcuffed him was not Shavers, Jakob or Story.

¶ 20    The officer who handcuffed defendant walked him back down the street to the 6600 address. Defendant observed a minivan in front of Morris' house. Five or six police officers jumped out of the minivan and ran into the house. As defendant and the officer approached the front steps outside Morris' house, Jakob exited the house and asked defendant for his name. Defendant gave Jakob his name and asked "[w]hat is the problem?" Jakob brought defendant up the front steps and into the foyer of the house. Defendant denied telling the officers that he would show them where "the stuff" was and denied stating "don't tear up me and my girlfriend's house." Defendant did not know why the police were at the house. They did not show him a search warrant.

¶ 21 Defendant observed about four officers inside the house. As defendant entered the house, officers brought Kendrick down from upstairs. Defendant asked Kendrick what was happening. Kendrick replied that the officers said they were looking for something. Defendant told Kendrick to ask to see a search warrant, and told police to show Kendrick a warrant. The officer who handcuffed defendant brought him outside and placed him in the brown detective vehicle. About 15 minutes, defendant was transferred to a police wagon and transported to the police station.

¶ 22 Defendant denied that the officers took him upstairs to a bedroom or took him upstairs to change his clothes. The clothes in the bedroom did not belong to him. The bedroom where the gun and men's clothing were found belonged to Kendrick and Shaquille. Defendant denied ever seeing the shotgun before and denied that the police showed him the gun. Defendant denied telling police that he got the shotgun from an old friend who had been dead for 20 years, or that he had the gun for protection on the block.

¶ 23 Defendant testified that he never spoke with Officer Story and no officer at the police station ever asked him for his address. He testified "[t]hey used my driver's license." In court, defendant identified a social security statement he received in the mail dated March 3, 2011. It was addressed to defendant at the 6500 address.

¶ 24 On cross-examination, defendant testified that prior to him living at the 6500 address with his mother-in-law, he and his wife, Morris, lived together on Winchester Avenue. Defendant and Morris' relationship deteriorated, and they each went their own way. Morris moved to the 6600 address on Seeley with their children. When defendant had nowhere to go, his mother-in-law allowed him to move in with her, slightly over a block away from Morris' house. Defendant occasionally visited his children at Morris' house, but not often. Defendant acknowledged that

there was only one bed in the bedroom he claimed was shared by Kendrick and Shaquille. He testified that Kendrick stayed with his girlfriend and stayed at Morris' house "off and on." Defendant denied that the address on his driver's license was the 6600 address.

¶ 25    In rebuttal, the State presented certified copies of defendant's prior convictions for murder and armed robbery from June 21, 1993.

¶ 26    The jury found defendant guilty of being an armed habitual criminal. The trial court sentenced defendant to 14 years' imprisonment.

¶ 27    On direct appeal, defendant argued that the State failed to prove that he had constructive possession of the shotgun because there was insufficient proof that he lived at the subject address or exercised control over the gun. He also argued that the trial court abused its discretion when it changed its *Montgomery* ruling prior to his second trial and allowed the State to use his murder conviction for impeachment purposes. In addition, defendant argued that the State erroneously elicited testimony that "contraband" was found near the shotgun, and that his fines and fees order should be corrected. This court ordered that the fines and fees order be corrected, and affirmed defendant's conviction. *People v. Patrick*, 2015 IL App (1st) 131110-U.

¶ 28    On February 2, 2017, defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) alleging that he was denied effective assistance from his trial and appellate counsel. Defendant alleged, *inter alia*, that his trial counsel was ineffective because counsel failed to file a "motion to suppress defendant's (alleged) confession by officer" that the shotgun belonged to him, that he obtained the gun from a friend 20 years ago, and "don't tear up me and my girlfriend house I'll show you the stuff." Defendant argued that a successful motion to suppress these statements would have removed the only and

most damaging evidence connecting him to the gun. He further argued that he was prejudiced by counsel's failure to file a motion to suppress because these statements were the crucial pieces of evidence that established his knowledge and control of the gun. Defendant also alleged that his trial counsel was ineffective because counsel failed to introduce into evidence six documents that were given to her as his proof of residence, showing that he lived at the 6500 address, not the 6600 address that was the subject of the search warrant. In addition, defendant alleged that his appellate counsel was ineffective for failing to raise these issues on direct appeal.

¶ 29    On April 14, 2017, the circuit court entered a written order summarily dismissing defendant's postconviction petition. The court found that defendant's claims of ineffective assistance of trial counsel could have been raised on direct appeal, and thus, were waived. Waiver aside, the court found that defendant's claim that counsel was ineffective for failing to file a motion to suppress his statements did not raise a meritorious claim because defendant did not specify a basis on which counsel should have moved to suppress the statements. As to defendant's claim that counsel failed to present available evidence that he did not reside at the 6600 address, the court found that defendant failed to attach any of the six documents to his petition, failed to specify the dates of those documents, and failed to explain how those documents demonstrated that he did not reside at the subject address. Consequently, the court found that defendant's conclusory and unsupported allegation failed to state the gist of a meritorious constitutional claim. Because there was no merit in defendant's claims of ineffective assistance of trial counsel, the court found that appellate counsel was not ineffective for failing to raise these issues on direct appeal. The circuit court concluded that the allegations in defendant's postconviction petition were frivolous and patently without merit, and summarily dismissed his petition.

¶ 30    On appeal, defendant contends that the circuit court erred when it dismissed his petition because he presented arguable claims that he received ineffective assistance from both his trial and appellate counsel. Defendant argues that his trial counsel rendered ineffective assistance when counsel failed to file a motion to suppress his statements to police obtained in violation of his *Miranda* rights, and failed to introduce available documentary evidence that he did not live at the house where police recovered the gun. Defendant also contends that his appellate counsel was ineffective for not raising these claims on direct appeal.

¶ 31    The State responds that the circuit court properly dismissed defendant's petition because defendant did not present an arguable claim of ineffective assistance of counsel and failed to comply with the pleading requirements of the Act. The State argues that defendant's claim that trial counsel failed to file a motion to suppress based on a *Miranda* violation is waived because it was not specified in his petition, and lacks merit because counsel filed a motion to suppress on the same grounds. The State further argues that defendant's claim that trial counsel failed to present documents that showed his residency lacks the required support because defendant did not attach the documents to his petition or explain their absence. In addition, the State argues that because trial counsel was not ineffective, appellate counsel was not ineffective for failing to raise these issues on direct appeal.

¶ 32    The Act provides a process whereby a prisoner can file a petition asserting that his conviction was the result of a substantial denial of his constitutional rights. 725 ILCS 5/122-1 (West 2016); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). A postconviction proceeding is not a substitute for a direct appeal, but instead, is a collateral attack upon the conviction that allows only limited review of constitutional claims that could not be raised on direct appeal. *People v.*

*Harris*, 224 Ill. 2d 115, 124 (2007). We review the circuit court's summary dismissal of defendant's postconviction petition *de novo*. *Coleman*, 183 Ill. 2d at 388-89. Under this standard, the reviewing court makes its own independent assessment of the allegations, and is " 'free to substitute its own judgment for that of the circuit court to formulate the legally correct answer.' " *People v. Edwards*, 197 Ill. 2d 239, 247 (2001) (quoting *Coleman*, 183 Ill. 2d at 388).

¶ 33    Our supreme court has held that a postconviction petition may be summarily dismissed as frivolous or patently without merit if it has "no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks such an arguable basis when it is based on fanciful factual allegations or an indisputably meritless legal theory, such as a theory that is completely contradicted by the record. *Id.* At the summary dismissal stage, all well-pled allegations in the petition must be taken as true unless they are contradicted by the record. *Coleman*, 183 Ill. 2d at 381-82.

¶ 34    Here, defendant alleges that he received ineffective assistance from both his trial and appellate counsel. Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Graham*, 206 Ill. 2d 465, 476 (2003). To support a claim of ineffective assistance of trial counsel, defendant must demonstrate that (1) counsel's representation was deficient, and (2) as a result, he suffered prejudice that deprived him of a fair trial. *Strickland*, 466 U.S. at 687. To establish prejudice, defendant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Graham*, 206 Ill. 2d at 476. The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). When raising such a claim, defendant

must show that appellate counsel's performance was deficient, and but for counsel's errors, there is a reasonable probability that the appeal would have been successful. *Id.* At the first stage of postconviction proceedings, allegations of ineffective assistance of counsel are judged by a lower pleading standard, and a petition raising such claims may not be summarily dismissed if it is arguable that counsel's performance fell below an objective standard of reasonableness, and it is arguable that defendant was prejudiced. *People v. Tate*, 2012 IL 112214, ¶¶ 19-20.

¶ 35 Defendant first contends that the trial court erred in dismissing his postconviction petition because he raised an arguable claim of ineffective assistance of trial counsel where counsel failed to file a motion to suppress his statements to police that were taken in violation of his *Miranda* rights. Defendant argues that after he was handcuffed, he made inculpatory statements in response to questioning from Jakob about the alleged offense. He points out that none of the three officers who testified at trial said that they advised him of his *Miranda* rights, and the arrest report shows that he was read his rights after the police asked him about and recovered the shotgun, which was after he made the statements. Defendant acknowledges that he did not specify the *Miranda* violation in his petition, but argues that his petition must be liberally construed to include it. He further argues that his claim is not forfeited because he also alleged ineffective assistance of appellate counsel for not raising this issue on direct appeal.

¶ 36 The State responds that defendant's claim is waived because he did not allege a *Miranda* violation in his petition and has raised the issue for the first time on appeal. The State notes that the circuit court was unable to determine the basis of defendant's claim and asserts that defendant could have argued that counsel should have filed the motion on several different bases. The State also argues that summary dismissal was proper because trial counsel filed a motion to quash arrest

and suppress evidence on the same grounds defendant now alleges. The State points out that the trial court denied that motion, finding that the police had probable cause to arrest defendant and that the conversation between defendant and the officers was not coercive or involuntary. Alternatively, the State argues that, if this court finds that trial counsel did not raise this claim in her motion to quash arrest and suppress evidence, summary dismissal was still proper because counsel was not ineffective for failing to file a non-meritorious motion. The State argues that defendant was not in custody for *Miranda* purposes when he made the statements, and even if he was, there is no evidence that he made the statements in response to questioning or interrogation by the officers.

¶ 37    We must first determine whether defendant's allegation was raised in his *pro se* petition or whether he is raising it for the first time on appeal, and thus, it is waived. The Act dictates that defendant's postconviction petition must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2016). "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2016). It is well-established that defendant is precluded from raising an issue on appeal that was not alleged in the postconviction petition he filed in the circuit court. *People v. Jones*, 213 Ill. 2d 498, 505 (2004).

¶ 38    The question on appeal from the dismissal of a postconviction petition is whether the allegations in the petition, when liberally construed and taken as true, are sufficient to invoke relief under the Act. *Jones*, 213 Ill. 2d at 505. The allegations, although limited in detail and liberally construed, "must nevertheless *clearly* set forth *the respects* in which petitioner's constitutional rights were violated." (Emphasis in original.) *People v. Reed*, 2014 IL App (1st) 122610, ¶ 57

(2014). This court may not excuse an appellate waiver caused by defendant's failure to include issues in his postconviction petition. *Jones*, 213 Ill. 2d at 508; *Reed*, 2014 IL App (1st) 122610, ¶ 43.

¶ 39 Our decision in *Reed* is instructive in this case. In *Reed*, the defendant alleged in his *pro se* postconviction petition, in pertinent part, that his counsel on direct appeal was ineffective for failing to challenge the admissibility of an oral statement the defendant made as hearsay. *Reed*, 2014 IL App (1st) 122610, ¶¶ 28, 59. The circuit court summarily dismissed the petition. *Id.* ¶ 32. On appeal, the defendant argued that his counsel on direct appeal was "ineffective in failing to argue the prosecutors and police failed to honor [the defendant's] requests to remain silent and for counsel, and interrogated him in violation of his fifth amendment rights." *Id.* ¶ 41. After analyzing this court's rulings following *Jones*, we found that the defendant in *Reed* had forfeited the issue raised on appeal. *Id.* ¶ 63. We found that, although the postconviction petition and the issue raised on appeal "nominally address[ed]" the same statement made by the defendant, the petition asserted a claim based on hearsay, while the appeal asserted a claim based on different constitutional grounds. *Id.* ¶ 59. We pointed out that "the respects" in which the defendant alleged that he had received ineffective assistance of counsel were "distinctly different," and that construing them as the same claim "would require more than liberal construction." *Id.* ¶¶ 60-61.

¶ 40 Here, defendant's postconviction petition and the issue he raises on appeal both "nominally address" an allegation that trial counsel was ineffective for failing to file a motion to suppress statements defendant made to police during the search. However, defendant's petition did not allege that any of his statements were taken in violation of his *Miranda* rights. Defendant did not allege any facts whatsoever that could be construed as a claim that his fifth amendment rights had

been violated. Nor did he allege any grounds on which a motion to suppress his statements could have been based. Defendant's claim that counsel was ineffective for failing to file a motion to suppress his statements is conclusory and does not comply with the Act's requirement that the petition "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2016). Similar to *Reed*, construing the allegation in defendant's petition as a claim that counsel was ineffective for failing to file a motion to suppress based on a *Miranda* violation "would require more than liberal construction." *Reed*, 2014 IL App (1st) 122610, ¶ 61.

¶ 41    We therefore conclude that defendant failed to raise the issue before us in his postconviction petition, and instead, has raised it for the first time on appeal. Accordingly, the issue is waived and we are precluded from considering it. *Jones*, 213 Ill. 2d at 508.

¶ 42    Defendant next contends that trial counsel rendered ineffective assistance because failed to introduce available documentary evidence that defendant did not live at the house where police recovered the gun. Defendant states that counsel had evidence that he lived at the 6500 Seeley residence rather than the 6600 address where the search occurred. Defendant asserts that in addition to the social security statement introduced at both trials, counsel had five other documents she should have used as proof of his residence including the statement from the Department of Human Services (DHS) that was introduced at the first trial, his driver's license, an insurance card for his Ford Explorer, a document from the Internal Revenue Service, and a letter from Sebis Direct. Defendant argues that the additional documentation would have supported his testimony, raised his credibility, and undermined the State's documentary proof of residence.

¶ 43    In support of his claim, defendant attached to his petition one page of the transcript from his first trial where, during a sidebar discussion regarding the admissibility of defendant's social

security and DHS documents, trial counsel stated that she had tendered four documents to the State. Counsel stated "[t]here are two others that we did not admit into evidence." Defendant circled and underlined that statement and wrote "WHY??" on the page.

¶ 44    The State responds that defendant's claim fails because he failed to comply with the pleading requirements of the Act where he did not attached the alleged documents to his petition or explain their absence. The State argues that there is no way to verify defendant's claim without the required documentation, and his failure to attach the documents justifies summary dismissal. The State further notes that counsel introduced the social security statement addressed to defendant at the 6500 address and argues that any additional documentation would have been cumulative. The State asserts that defendant, therefore, was not prejudiced by counsel's failure to present additional documents, and counsel was not ineffective.

¶ 45    Pursuant to section 122-2 of the Act, defendant is required to attach to his petition "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2016). The purpose of this requirement is for defendant to show that the allegations in his postconviction petition are capable of objective or independent corroboration. *People v. Hall*, 217 Ill. 2d 324, 333 (2005) (citing *People v. Collins*, 202 Ill. 2d 59, 67 (2002)). The attached documentation "must identify with reasonable certainty the sources, character, and availability of the alleged evidence supporting the petition's allegations." *People v. Delton*, 227 Ill. 2d 247, 254 (2008). Failure to either attach the required documentation or explain its absence is "fatal" to a postconviction petition and alone justifies summary dismissal of the petition. *Id.* at 255.

¶ 46     Here, we find that defendant failed to comply with section 122-2 of the Act because he did not attach copies of the documents he claims are proof that he resided at the 6500 Seeley address, nor did he explain why they were not attached. Consequently, defendant has not shown that his allegation is capable of objective or independent corroboration. *Hall*, 217 Ill. 2d at 333. The transcript page that defendant attached to his petition is not sufficient to corroborate his allegation because it does not identify the sources or character of the alleged evidence. *Delton*, 227 Ill. 2d at 254. The page does not identify what documents counsel was referring to or describe the information contained in those documents. We do not know if any of these documents included defendant's name and the 6500 Seeley address. Nor do we know the dates of these documents to determine if they were in relative proximity to the date of the search.

¶ 47     Notwithstanding the pleading deficiency, we find no arguable merit in defendant's claim that trial counsel was ineffective for failing to present additional documentation that defendant resided at the 6500 address. "In considering whether counsel's performance was deficient, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' " *People v. Patterson*, 217 Ill. 2d 407, 441 (2005) (quoting *Strickland*, 466 U.S. at 689). In general, conduct related to trial strategy will not support a claim of ineffective assistance unless counsel failed to pursue any meaningful adversarial testing. *Id.* Decisions regarding what evidence to present at trial are matters of trial strategy, and as such, are generally immune from claims of ineffective assistance of counsel. *People v. Munson*, 206 Ill. 2d 104, 139-40 (2002). Moreover, "[t]rial

counsel's performance cannot be considered deficient because of a failure to present cumulative evidence." *People v. Henderson*, 171 Ill. 2d 124, 155 (1996).

¶ 48    Here, the trial record shows that defendant testified that he resided at the 6500 address. To corroborate defendant's testimony, counsel presented a social security statement dated March 3, 2011, addressed to defendant at the 6500 address. At the first trial, counsel also presented a statement from DHS addressed to defendant at the 6500 address dated June 7, 2011. Counsel did not present the DHS document at the second trial. Thus, it appears from the record that counsel determined that cumulative evidence showing that defendant resided at the 6500 address was not necessary. As noted above, we do not know if these other documents included defendant's name and the 6500 address, nor do we know the dates of these documents. Counsel's decision not to present cumulative evidence was a matter of trial strategy, and as such, does not support a claim of ineffective assistance of counsel. *Patterson*, 217 Ill. 2d at 441; *Munson*, 206 Ill. 2d at 139-40. Accordingly, we find no arguable merit in defendant's allegation that trial counsel was ineffective for failing to present cumulative evidence of his residency.

¶ 49    Based on our finding that trial counsel was not ineffective for failing to present additional evidence of defendant's residency, it therefore follows that appellate counsel did not render ineffective assistance when counsel did not raise this issue on direct appeal. A claim of ineffective assistance of appellate counsel turns on "whether petitioner's underlying ineffective assistance of trial counsel claim would have been successful if raised on direct appeal." *People v. Childress*, 191 Ill. 2d 168, 175 (2000). If the underlying issue has no merit, then defendant did not suffer prejudice from counsel's failure to raise it on direct appeal. *Id.* Consequently, defendant's claim of ineffective assistance of appellate counsel is without merit.

¶ 50    For these reasons, we conclude that defendant's allegations of ineffective assistance of trial and appellate counsel had no arguable basis in law or fact. Accordingly, we affirm the judgment of the circuit court of Cook County summarily dismissing defendant's postconviction petition.

¶ 51    Affirmed.