2022 IL App (1st) 210112-U

FIFTH DIVISION
Order filed: February 4, 2022

No. 1-21-0112

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 18864 |
| | ) | |
| OLIVER SPANN, | ) | Honorable |
| | ) | Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the first-stage summary dismissal of the defendant's *pro se* postconviction petition alleging ineffective assistance of trial counsel where (1) the defendant failed to attach documentation to his petition or adequately explain its absence, (2) the defendant's claims failed to state the gist of a claim of deficient performance where they were incapable of objective or independent corroboration and (3) even if taken as true the defendant's claims of ineffective assistance of counsel failed to establish prejudice.

¶ 2    The defendant, Oliver Spann, appeals from an order of the circuit court of Cook County,

dismissing his postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS

5/122-1 *et seq.* (West 2020)). On appeal, he contends that the circuit court erred in dismissing his

petition because he raised an arguable claim that trial counsel was ineffective for (1) failing to introduce evidence of the decedent's past violent acts, and (2) failing to impeach a State's witness with prior convictions. For the reasons that follow, we affirm.

¶ 3    The defendant was charged by indictment with two counts of first degree murder for the stabbing death of Elvis Canfield. Prior to trial, the defendant informed the State that he would be raising the affirmative defense of self-defense. The case proceeded to a jury trial.

¶ 4    At trial, the State presented, *inter alia¸* the testimony of two eyewitnesses, who both knew the defendant and the victim well. Nakeema Hodges had dated the defendant for six years and he was the father of two of her five children. Olen Hurt had been a friend of Hodges for approximately 20 years and knew the defendant.

¶ 5    As relevant here, Hodges testified, that she ended her relationship with the defendant in June 2013 and began dating Canfield. On the night of August 27, 2013, she, Hurt and Canfield were drinking beer in front of an apartment building near Springfield Avenue and Division Street in Chicago. The defendant was nearby and attempted to engage in conversation with the group, but they ignored him. At some point, Hurt left to buy cigarettes with money that Canfield had given him. When Hurt returned, the defendant asked him for a cigarette, but Hurt said they were not his to give. After Hurt gave Canfield a cigarette, the defendant "stormed off." Soon after, Canfield left walking westbound on Division.

¶ 6    Shortly after midnight, Hodges observed the defendant riding a bicycle "real fast" in the direction Canfield had walked a few minutes earlier. Hodges followed and saw the defendant approach Canfield. They began to wrestle, and the defendant threw Canfield to the ground. Hodges thought the defendant punched Canfield, but as she got closer saw a knife in his hand and saw

Canfield bleeding. She recognized the knife as part of a kitchen set, which the defendant always carried with him. On cross-examination, Hodges denied that Canfield hit the defendant with a bottle or that Canfield and Hurt beat the defendant.

¶ 7    Hurt testified that, he saw the defendant riding a bicycle in the direction of Canfield and followed Hodges. He saw the defendant and Canfield "swinging on each other." The defendant hit Canfield, who fell to the ground. The defendant was on top of Canfield and Hurt believed that the defendant was punching Canfield. Hodges pushed the defendant off Canfield and the defendant left on the bicycle.

¶ 8    The defendant testified that on the night of August 27, 2013, he was walking with a bicycle on Springfield when he saw Hodges, Hurt and Canfield drinking. Hodges and Hurt were smoking PCP. He confronted Hodges about the PCP. As he did so, Canfield smashed a bottle of Hennessy on his head. He fell to the ground and Canfield and Hurt "beat [him] pretty badly" and robbed him. Eventually, he stood up, grabbed his bicycle and walked away. He testified that he was too dizzy to ride the bicycle.

¶ 9    As the defendant was walking, Canfield approached him from behind and began punching him. The defendant fell to the ground and Canfield, who was on top of him, continued to hit him. Canfield pulled out a knife and said that he was going to kill the defendant. The defendant twisted the knife around so that it went into Canfield's chest. After stabbing Canfield, the defendant ran away because he was afraid of "gang bangers" who were approaching the scene.

¶ 10    The jury ultimately found the defendant guilty of first degree murder. The defendant appealed arguing, that his conviction should be reduced to second degree murder, and that his sentence was excessive. We affirmed. See *People v. Spann*, 2019 IL App (1st) 161255-U. The

supreme court denied the defendant's petition for leave to appeal. See *People v. Spann*, No. 125719 on March 25, 2020.

¶ 11    On September 11, 2020, the defendant filed a petition for postconviction relief. The petition contained numerous allegations of constitutional error. Relevant here are paragraphs 19 and 20 which alleged ineffective assistance of trial counsel.

¶ 12    Paragraph 19 alleged:

> "Petitioner Oliver Spann received ineffective assistance of counsel for failure to put in motion to cross examine witness Olen Hurt to use his background to show that he has fraud and drugs which would of [*sic*] helped the self defense claim if the jury would of heard of it which they didn't if the counsel would of mention the background of Olen Hurt to the jury the outcome of the trial would of been not guilty. See affidavit … Petitioner transcripts of the State motion in limine to not use Olen Hunt background was lost in transfer by correctional officers."

An affidavit from the defendant attached to the petition read:

> "Do not have the trial transcript of the proceedings of the State putting motion to *limine* to not use Olen Hunt background which Counsel Ruth McBeth didn't filed any motion to use Olen Hunt background to jury and the correctional officers lost the trial transcripts while petitioner was going on transfer to Stateville Correctional Center."

¶ 13    Paragraph 20 alleged:

> "Petitioner Oliver Spann received ineffective assistance of counsel for not filing a motion for *Lynch* to use the victim Elvis Canfield background of domestic and battery for which the jury didn't hear which would of help petitioner self defense claim if the counsel

would have mention the victims background to the jury the outcome of the jury trial proceedings would of been not guilty see affidavit… Petitioner lost police reports of Elvis Canfield background going on transfer which officers lost."

An affidavit from the defendant attached to the petition read:

"Was on transfer to Stateville to were correctional officers lost my transcripts and the police reports of Elvis Canfield background to which I do not have and Ruth McBeth didn't use to help in my defense. And I am receiving help with this affidavit."

¶ 14    On December 7, 2020 the circuit court summarily dismissed the defendant's petition with a written order.

¶ 15    The circuit court found, in regard to the impeachment of Hurt, that the defendant had failed to attach supporting documents to his petition but explained that he lost a report with Hurt's criminal history. The court held, citing *People v. Pineda*, 373 Ill. App. 3d 113, 118 (2007), that this was not an arguable claim because, even if Hurt's testimony had been discredited Hodges' testimony would have remained unimpeached. The court concluded that the outcome of the trial would not have been different.

¶ 16    The circuit court held, in regard to the *Lynch* evidence (See *People v. Lynch*, 104 Ill. 2d 194, 199-200 (1984)), that the defendant could not establish an arguable ineffective assistance of counsel claim, because the evidence of a domestic battery was remote in similarity and might not have been permitted even if trial counsel had requested it. The circuit court further held that it was not likely that the jury would have credited the defendant's version of events over the one Hodges and Hurt testified to.

¶ 17    This appeal followed.

¶ 18    On appeal, the defendant asserts that the circuit court erred when it summarily dismissed his postconviction petition at the first stage of proceedings because (1) he provided a sufficient explanation for not attaching supporting documents, and (2) he raised two arguable claims of ineffective assistance of counsel based on the failure to present *Lynch* evidence and the failure to impeach Hurt with his background. We disagree.

¶ 19    Pursuant to the Act, a postconviction proceeding has three distinct stages. 725 ILCS 5/122-1 *et seq.* (West 2020); *People v. Harris*, 2019 IL App (4th) 170261, ¶ 10 (citing *People v. Allen*, 2015 IL 113135, ¶ 21). In the first stage, the defendant files a petition, and the circuit court, without input from the State, determines whether it is frivolous or patently without merit. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). To survive dismissal at this stage, a petition need only present the gist of a constitutional claim. *Id.* (citing *People v. Porter*, 122 Ill. 2d 64, 74 (1988)). "Gist" is not, by itself, a legal standard; it merely describes what the defendant must allege. *People v. Hodges*, 234 Ill. 2d 1, 11 (2009). The legal standard is whether the petition is frivolous or patently without merit, which means it has no arguable basis in law or fact. *Id.* at 16. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* "At the pleading stage of postconviction proceedings, all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record are to be taken as true." *People v. Robinson*, 2020 IL 123849, ¶ 45; see also *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 47. We review the summary dismissal of a postconviction petition *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 20    Because most postconviction petitions are drafted by *pro se* defendants, the threshold for moving from the first to the second stage is low. *Harris*, 2019 IL App (4th) 170261, ¶ 11; see also

*Allen*, 2015 IL 113135, ¶ 24. First-stage dismissal is inappropriate if the petition alleges sufficient facts to state the gist of a constitutional claim, even where the petition lacks formal legal argument or citations to authority. *Allen*, 2015 IL 113135, ¶ 24. However, this low threshold does not excuse a defendant from providing factual support for his claims. *Id.* A defendant must supply a sufficient factual basis to show that the allegations in the petition are " 'capable of objective or independent corroboration.' " *Id.* (quoting *People v. Collins*, 202 Ill. 2d 59, 67 (2002).

¶ 21    Section 122-2 of the Act provides: "The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2020). The purpose of the "affidavits, records, or other evidence" requirement is to establish that a petition has met the " 'capable of objective or independent corroboration' " standard. See *People v. Reed*, 2014 IL App (1st) 122610, ¶ 40 (quoting *Hodges*, 234 Ill. 2d at 10). At the first stage of review, if the affidavits do not comply with the evidentiary requirements of section 122-2, then the petition must meet the pleading requirements of section 122-2 and provide, at a minimum, an explanation for the absence of affidavits or other documentation of the defendant's claims. *Reed*, 2014 IL App (1st) 122610 at ¶ 40. If a defendant fails to either attach supporting documents or explain their absence, the petition may be summarily dismissed. *Id.* (citing *People v. Delton*, 227 Ill. 2d 247, 255 (2008)).

¶ 22    First, the defendant concedes that he did not attach any documentation of his claims that Canfield had committed prior violent acts admissible pursuant to *Lynch* to support his self-defense claim or that Hurt had convictions for "fraud and drugs." However, the defendant argues that he explained in his petition and the attached affidavits that these documents were lost by correctional officers during his transfer to Stateville Correctional Center. The defendant contends that this

explanation was sufficient to explain their absence and, accordingly his petition is not subject to dismissal solely on the basis of a lack of supporting documents.

¶ 23     The defendant directs our attention to the unpublished case, *People v. Simmons*, 2021 IL App (1st) 180699-U, and urges us to find its reasoning persuasive. In *Simmons*, the postconviction petitioner, who had been convicted of murder, alleged that he was denied the effective assistance of counsel because his trial counsel refused to call as witnesses his girlfriend and another woman. *Id.* at ¶ 20. The petitioner alleged that these women could provide an alibi for him and that they would testify he was home with them at the time of the murder. *Id.* The petitioner alleged that he was unable to obtain affidavits from the women because he had been moved repeatedly from Pontiac Correctional Center to a prison in New Jersey to two different facilities in Arkansas and finally to a facility operated by the Arizona Department of Corrections. *Id.* at ¶ 21. The petition alleged that because the petitioner was incarcerated and indigent, he was unable to stay in contact with the witnesses. *Id.*

¶ 24     We do not find the defendant's comparison of his case to *Simmons* persuasive. First, although the defendant, like *Simmons*, is incarcerated and presumably indigent, accepting those reasons alone as sufficient would effectively write section 122-2 out of the Act because the act is only available to persons "imprisoned in the penitentiary." 725 ILCS 5/122-1(a) (West 2020); see also *Harris¸* 2019 IL App (4th) 170261 at ¶19. Second, unlike *Simmons*, the defendant alleges only a single transfer within the state, not a multistate series of transfers to multiple prison facilities. See *Simmons*, 2021 IL App (1st) 180699-U at ¶ 21. Third, *Simmons* unlike the defendant in this case had personal knowledge of the relevant facts. The *Simmons* petitioner alleged that he was with two women who could have provided alibi testimony. Therefore, he was able to provide

factual allegations regarding their anticipated testimony with detail that the defendant in this case could not. For example, the defendant alleged that he had seen police reports regarding the victim's violent tendencies. The defendant never alleged he had personal knowledge of the victim's violent acts. Accordingly, without the police reports, assuming they existed at some point, there is no way to determine what type of *Lynch* material would have been available to the defense. Finally, the defendant's allegations regarding the missing documentation is, in part, rebutted by the record. The defendant alleged that he was aware of Hurt's background because he had a transcript of a hearing on the State's motion *in limine* to prevent introduction of Hurt's background. However, he acknowledges on appeal that the record does not contain any indication that the State moved *in limine* to bar the defense from impeaching Hurt with his criminal background or that there exists a transcript of such proceedings. The defendant not only failed to attach documents to his petition, but he also admits that at least some of the documents, he alleges were lost, never existed. Therefore, we conclude that the defendant has failed to meet the evidentiary requirements of section 122-2 by failing to attach documents supporting his claims. See *Reed*, 2014 IL App (1st) 122610 at ¶ 40. We similarly conclude that the defendant has failed to meet the pleading requirements of section 122-2 by failing to adequately explain the documents absence. *Id.* Accordingly, the defendant's petition was subject to dismissal for failure to meet the requirements of section 122-2. *Id.*

¶ 25    Moreover, even if we were to find that the defendant met the pleading requirements of section 122-2, we find that he failed to set out an arguable claim of ineffective assistance of counsel. The defendant maintains that (1) trial counsel was arguably ineffective for not presenting

*Lynch* evidence, and (2) trial counsel was arguable ineffective for not impeaching Hurt with his background.

¶ 26    To succeed on an ineffective assistance of counsel claim, a defendant must demonstrate that his trial counsel's performance was deficient and that he suffered prejudice because of his counsel's deficient conduct. See *People v. Albanese*¸ 104 Ill. 2d 504, 525 (1984) (adopting standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984)). At the first stage of postconviction proceedings, a petition alleging ineffective assistance of counsel, may not be dismissed if it is arguable that (1) counsel's performance fell below an objective standard of reasonableness and (2) the defendant was prejudiced. *Hodges*¸ 234 Ill. 2d at 17. Broad conclusory allegations of ineffective assistance of counsel are insufficient to avoid summary dismissal at the first stage. *People v. Delton*, 227 Ill. 2d 247, 258 (2008).

¶ 27    We first address the defendant's assertion that trial counsel was ineffective for failing to present *Lynch* evidence. In *Lynch*, our supreme court held that evidence of a victim's aggressive and violent character can support a self-defense theory in two ways: (1) the defendant's knowledge of the victim's violent tendencies affects his perceptions and reactions to the victim's behavior, and (2) evidence of the victim's propensity for violence tends to support the defendant's version of the facts where there are conflicting accounts of what happened. *Lynch*, 104 Ill. 2d at 200.

¶ 28    A defense attorney's basic function is to " ' make the adversarial testing process work in the particular case.' " *People v. Ramirez-Lucas*, 2017 IL App (2d) 150156, ¶ 42, (quoting *People v. Domagala*, 2013 IL 113688, ¶ 38). To fulfill that function, attorneys have an obligation " 'to explore readily available sources of evidence that might benefit their clients.' " *Ramirez-Lucas*, 2017 IL App (2d) 150156 at ¶ 42 (quoting *People v. Morris*, 335 Ill. App. 3d 70,79 (2002)). The

failure to introduce evidence to support a defense can constitute ineffective assistance of counsel. See *People v. York*, 312 Ill. App. 3d 434, 439 (2000) (failure to introduce DNA evidence).

¶ 29 Here, the defendant did not allege that he had knowledge of the victim's violent character. Therefore, evidence that Canfield had a history of "domestic and battery" would be admissible, if at all, as the second type of *Lynch* evidence. This allegation, however, is so lacking in a factual basis that we cannot determine whether it is even capable of objective or independent corroboration. The defendant alleged that he had "police reports" which supported his contention. However, if all the defendant possessed were police reports they, by themselves would not be adequate as *Lynch* material, because a mere arrest is inadmissible. See *People v. Ellis*, 187 Ill. App. 3d 295, 301 (1989). We are left to speculate whether the arrest or arrests led to convictions, whether those arrest were for domestic battery or some other battery offense, and whether the convictions were recent. The defendant suggests in his opening brief that it is possible that the police reports might have led to admissible evidence of Canfield wielding a knife in the recent past. However, the *pro se* petition makes no such detailed factual claim. Instead, the defendant alleged, merely, that he had seen a police report that mentioned "domestic and battery" and that trial counsel should have presented this evidence to the jury. We find this amounts to the sort of "broad conclusory allegation" of ineffective assistance of counsel that the supreme court rejected in *Delton. See Delton*, 227 Ill. 2d at 258. Therefore, we cannot conclude that the defendant adequately alleged even the gist of a claim that trial counsel's performance was deficient for failing to discover, investigate, or recognize the importance of these alleged police reports.

¶ 30 The defendant's argument that trial counsel was ineffective for failing to impeach Hurt with his background of "fraud and drugs" is likewise lacking in factual support. The defendant

alleged, in an affidavit attached to his petition that he learned of Hurt's background from the transcript of a motion *in limine*. However, on appeal the defendant concedes that no such hearing took place and consequently no such transcript ever existed. The defendant also concedes that a few weeks before trial both the State and counsel for the defendant indicated that they were not aware of criminal history information relevant for impeachment of the State's witnesses. We find that the record clearly rebuts the defendant's claim that he learned of impeaching convictions during a hearing on a motion *in limine*. Therefore, we need not accept these allegations as true. See *Robinson*, 2020 IL 123849 at ¶ 45. Accordingly, we conclude that the trial court did not err in rejecting this claim.

¶ 31    Finally, we examine the prejudice prong of the defendant's ineffective-assistance-of-counsel claims. Initially, we note that is difficult to evaluate this prong in light of the lack of clear factual allegations. For example, we do not know whether the victim's alleged background of "domestic and battery" was proximate in time or factually similar to the defendant's account of his struggle with the victim. Moreover, even if trial counsel had successfully impeached Hurt and presented *Lynch* evidence, the jury still would have heard Hodges' unimpeached account of the stabbing. In light of the strong evidence of defendant's guilt and the limited factual allegations of the defendant's petition, we cannot conclude that it is even arguable that the outcome of the trial would have been different. See *People v. Pineda*, 373 Ill. App. 3d 113, 118 (2007) (holding that the defendant failed to establish the prejudice prong of *Strickland*, where the testimony of a second victim would have been presented to the jury even if the first victim had been impeached with *Lynch* evidence). Therefore, we conclude that the petition did not adequately plead even an arguable claim of ineffective assistance of counsel.

¶ 32    In light of the lack of documentary support, the failure to establish arguably deficient performance by trial counsel, and the failure to establish arguable prejudice, we cannot conclude that the trial court erred when it dismissed the defendant's postconviction petition. For these reasons we affirm the judgment of the circuit court of Cook County.

¶ 33    Affirmed.